**FLITTER MILZ, P.C.**   ATTORNEYS FOR PLAINTIFF
CARY L. FLITTER   EVA MIGLIORE
ANDREW M. MILZ
JODY T. LÓPEZ-JACOBS
1814 East Route 70, Suite 350
Cherry Hill, NJ 08003
(856) 396-0600

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| EVA MIGLIORE,<br><br>                    Plaintiff,<br>          vs.<br><br>VISION SOLAR LLC,<br><br>VISION SOLAR NJ LLC,<br><br>JON SEIBERT,<br><br>SUNLIGHT FINANCIAL LLC,<br><br>CROSS RIVER BANK,<br><br>                    Defendants. | CIVIL ACTION NO.<br><br><br>**COMPLAINT** |

### I.  INTRODUCTION

1.    This is a consumer protection action for damages pursuant to New Jersey's Consumer Fraud Act ("CFA") and other laws.

2.    Defendants are in the business of selling and financing solar panel systems that are installed on consumers' homes. Defendants' door-to-door sales agents solicit consumers using electronic tablets such as iPads and iPhones to enter into loans to purchase solar panels. The standard loan term is 25 years.

3.    Defendants' door-to-door sales practices are fraudulent and deceptive, as sales agents regularly misrepresent the nature of the transaction, forge the electronic contracts, and

deliberately conceal the forged contracts from consumers, who have been promised significant savings and "free" solar panels.

4.      The CFA requires that Defendants provide consumers a copy of the contract at the time of signing.  The CFA also affords consumers the right to cancel the contract within three days of receiving the contract.

5.      Here, Defendants forged the signature of Plaintiff Eva Migliore, a senior citizen, on a 25-year loan agreement and other contract documents purportedly obligating Plaintiff to a $65,826 loan with a finance charge of $33,923.82, making the Total of Payments $99,749.82.

6.      Defendants did not provide Mrs. Migliore a copy of the forged 25-year loan agreement or other contract documents at the time of execution—indeed, Plaintiff had no knowledge of any contract.  Instead, Plaintiff received a copy of the forged contracts only *after* a solar panel system was installed on her house.

7.      Soon after Plaintiff learned of the forged contracts, oral notice of cancellation was provided to Defendants, but Defendants refused to honor the notice of cancellation.

8.      Plaintiff accordingly brings these claims for damages and other equitable relief.

## II.  JURISDICTION

9.      Jurisdiction arises under 28 U.S.C. § 1331 with respect to the federal claims, and under 28 U.S.C. § 1337 with respect to the state law claims.

10.      Venue is proper because the offending conduct took place in this district.

## III.  PARTIES

11.      Plaintiff Eva Migliore is a consumer who resides in New Jersey.

12.     Defendant Vision Solar LLC is a foreign limited liability company incorporated in Pennsylvania with a principal office and headquarters at 501 East Black Horse Pike, Blackwood, NJ 08012, and a registered office at 511 Route 168, Blackwood, NJ 08012.

13.     Defendant Vision Solar NJ LLC is a foreign limited liability company with a registered office at 2 Appomattox Drive, Gloucester Township, NJ 08021 and a main business address at 205 Arch Street, Philadelphia, PA 19106.

14.     Vision Solar NJ LLC represented to the New Jersey Department of the Treasury that it was incorporated in Pennsylvania.

15.     There is no company by the name "Vision Solar NJ LLC" that was incorporated in Pennsylvania.

16.     Vision Solar LLC and Vision Solar NJ LLC are collectively referred to as "Vision" or "Vision Solar."

17.     Vision Solar is in the business of marketing, selling, leasing, designing, constructing, installing, and servicing photovoltaic and/or solar energy systems on residential properties.

18.     Defendant Sunlight Financial, LLC ("Sunlight") is a foreign corporation with a registered office at Corporation Service Company, Princeton South Corporate Ctr, Ste 160, 100 Charles Ewing Blvd, Ewing, NJ 08628.

19.     Sunlight operates a technology-enabled financial services platform using a nationwide network of contractors at the point-of-sale to offer homeowners secured and unsecured loans, originated by third-party lenders, for the purchase and installation of residential solar energy systems and other home improvements.

20.     Sunlight arranges for the origination of loans by third-party lenders in two distinct ways: direct channel loans and indirect channel loans.

21.     Sunlight arranges for certain direct channel loans to be originated and retained by third parties ("Direct Channel Partners"). The Direct Channel Partners originate the Direct Channel Loans directly, using their own credit criteria. These Direct Channel Partners pay for Direct Channel Loans by remitting funds to Sunlight, and Sunlight is thereafter responsible for making the appropriate payments to the relevant contractor.

22.     Sunlight earns income from the difference between the cash amount paid by a Direct Channel Partner to Sunlight for a given Direct Channel Loan and the dollar amount due to the contractor for such Direct Channel Loan. Sunlight does not participate in the ongoing economics of the Direct Channel Loans and, generally, does not retain any obligations with respect thereto except for certain ongoing fee-based administrative services performed by Sunlight.

23.     Sunlight arranges for Indirect Channel Loans to be originated by Sunlight's issuing bank partner, Cross River Bank. Sunlight has entered into program agreements with Cross River Bank that govern the terms and conditions with respect to originating and servicing the Indirect Channel Loans and Sunlight pays Cross River Bank a fee based on the principal balance of Loans originated by Cross River Bank. Cross River Bank funds these Loans by remitting funds to Sunlight, and Sunlight is thereafter responsible for making the appropriate payments to the relevant contractor. Sunlight arranges for the sale of certain Indirect Channel Loans, or participations therein, to third parties.

24.     Sunlight regularly partners with and uses door-to-door sales companies such as Vision Solar, and their agents, to enter into loans for solar products.

4

25.     Defendant Cross River Bank is a New Jersey state-chartered bank with a principal place of business at 885 Teaneck Rd, Teaneck, NJ 07666.

26.     Cross River Bank operates a fund from which Sunlight can borrow to make Sunlight's point-of-service and contractor loans.

27.     Pursuant to the FTC Holder rule, Cross River Bank is subject to all claims that Plaintiff may assert against Vision Solar and Sunlight.

28.     Defendant Jon Seibert ("Seibert") is an adult individual who maintains an office for the regular transaction of business at 501 East Black Horse Pike, Blackwood, NJ 08012.

29.     Seibert is the CEO of Vision Solar.

30.     At all times relevant, Defendants acted on behalf of and for the benefit of the other Defendants.

31.     Defendants have condoned, ratified, approved of, and assumed responsibility for the conduct of the other Defendants and their agents.

**IV. <u>STATEMENT OF CLAIM</u>**

<u>*Defendants' Offer of Free Solar Panels*</u>

32.     Eva Migliore owns and lives at her home located at 42 Hummingbird Lane, Whiting, NJ 08759.

33.     In the community in which Mrs. Migliore lives, there are large, conspicuous signs that prohibit solicitations.

34.     In or about October 2022, Defendants' sales agent solicited Mrs. Migliore about "free" solar panels. The sales agent acting on behalf of Defendants visited Mrs. Migliore at her home, offering her energy conservation and solar panels that, in their words, would be "free."

35.    Mrs. Migliore told Defendants' sales agent that she would need to talk to her children about getting the panels, but the sales agent rushed her, telling her, "Don't worry about it," and that "we want to hurry up and get going with it, or else you're not going to get it like it is."  The sales agent advised that they would just put the panels up and she could talk to her children later.

36.    Mrs. Migliore did not sign anything during the interaction, but she orally agreed with the sales agent to move forward with the installation of free solar panels.

37.    At no point during the solicitation did Defendants' sales agent mention the need for or existence of a financed transaction or loan.

38.    No contract documents—paper or electronic—were sent or shown to Mrs. Migliore at or near the time of the solicitation.

39.    Mrs. Migliore's roof was not suitable for solar panels.

40.    Approximately three or four years ago, the roof of Mrs. Migliore's home failed inspection.

41.    The house is also surrounded by trees that would shade the solar panels, as depicted below:





42.      Nonetheless, panels were installed in January 2023.

***The Migliores Discover the Forgery and Cancel the Contract***

43.      In February 2023, Mrs. Migliore was contacted several times by Vision Solar to arrange for inspection of the solar panels to make them operational.

44.      Mrs. Migliore's son, Joseph, learned about these phone calls, and promptly thereafter called Vision Solar on Mrs. Migliore's behalf to get more information.

45.      Joseph was told that Mrs. Migliore had entered into a contract for the solar panels, but that there was a "clerical error" with his mother's email address that prevented her from being emailed a copy.

46.      Indeed, the email used is incorrect, as it misspelled Mrs. Migliore's name— "Migilore" instead of "Migliore."

47.      After Joseph provided the correct email address for his mother, documents were emailed to her for the first time, including a "Summary of Key Loan Terms" from Sunlight, which stated, "We are excited to partner with Vision Solar LLC to help you go solar!"

48.      Also included in the package of documents was a "Solar Energy System Long-Term Loan Agreement and Promissory Note, Nonnegotiable Consumer Note" dated October 28, 2022 ("25-Year Loan"). The 25-Year Loan purports to obligate Mrs. Migliore to make monthly payments to Defendant Cross River Bank for 25 years, with the Total of Payments summing to $99,749.82.

49.      The 25-Year Loan also purports to give Cross River Bank a security interest in the solar panel system installed on Mrs. Migliore's home.

50.      Sunlight, which is listed as the "Envelope Originator" on the 25-Year Loan, enabled the loan transaction to proceed without Mrs. Migliore's knowledge or consent.

51.     The 25-Year Loan bears the purported electronic signatures and initials of Mrs. Migliore, but she denies signing any documents at or near the time of the solicitation in October 2022.  The electronic signatures and initials are forgeries.

52.     Defendants intentionally hid the 25-Year Loan from Mrs. Migliore, as demonstrated by the DocuSign Certification, which shows that the Loan was sent to an email address that does not belong to her and was signed through that email.

53.     Later, on or about March 1, 2023, Mrs. Migliore's son and daughter-in-law were sent a copy of a document entitled "Residential Sales Agreement" dated October 28, 2022 ("RSA").  The RSA purports to obligate Mrs. Migliore to pay $65,826 to Vision Solar.

54.     The RSA bears the purported electronic signature of Mrs. Migliore, but she denies signing any documents at or near the time of the solicitation in October 2022.  The purported electronic signature is a forgery.

55.     The RSA represents that Vision Solar has the Home Improvement License No. 13VH06047100, which is associated with another company—Code Green Solar, LLC—for which Seibert worked as Chief Operating Officer.

56.     Code Green Solar, LLC is now defunct, as the former owner and CEO, Charles E. Kartsaklis—Seibert's former associate—has pleaded guilty to wire fraud in connection with his fraudulent documents he submitted to the U.S. Treasury Department to obtain over $3 million in federally funded rebates. See U.S. Attorney's Office, District of New Jersey, "President And Chief Executive Officer Of Now-Defunct Code Green Solar LLC Admits Wire Fraud Scheme," https://www.justice.gov/usao-nj/pr/president-and-chief-executive-officer-now-defunct-code-green-solar-llc-admits-wire-fraud (May 3, 2019). Kartsaklis was sentenced to 10 months in prison and ordered to pay more than $3 million in restitution.

57.     Defendants intentionally hid the RSA from Mrs. Migliore, as demonstrated by the incorrect email address on the RSA.

58.     Defendants intentionally hid other documents from Mrs. Migliore as well, including other documents purportedly bearing the electronic signature of Mrs. Migliore, but which she did not sign.  This includes a document that Vision Solar calls a "Power of Attorney."

59.     On information and belief, Defendants' sales agent created an email address very similar to Mrs. Migliore's email, sent all contract documents to that email, and forged Mrs. Migliore's electronic signature on those contract documents on the sales agent's mobile phone.

60.     The IP address associated with the forged signatures shows that they were signed over the T-Mobile network in Philadelphia, PA, about 50 miles away from Mrs. Migliore's home in Whiting, NJ.  Mrs. Migliore does not use T-Mobile.

61.     In February 2023, Defendants were notified that Mrs. Migliore desired to cancel the transactions.

62.     Despite being notified of Mrs. Migliore's desire to cancel, Defendants did not honor the request.

63.     Defendants continue to deem Mrs. Migliore bound by the forged documents.

### *Defendants Submit Forged Documents to the State of New Jersey*

64.     Before Mrs. Migliore and her children learned about the existence of the forged 25-year Loan and RSA, Defendants submitted the forged RSA and other forged documents to the State of New Jersey for the purpose of registering with the New Jersey Clean Energy Program.

65.     The submission includes a "Solar Purchase Disclosure Form" that "is designed to help you [the purchaser] understand the terms and cost of your purchase of a solar electric

system." Defendants never sent or showed this Solar Purchase Disclosure Form to Mrs. Migliore.

66.    The Solar Purchase Disclosure Form inaccurately states that the solar system "WILL NOT be financed."

67.    The Solar Purchase Disclosure Form is signed by Jon Seibert, whose signature appears next to the forged handwritten signature of Mrs. Migliore, as depicted:

68.    Defendants' submissions to the State of New Jersey also included an "ADI Registration Certification Form."

69.    The "ADI Registration Certification Form" identifies "Eva Migliore" as the premise contact, but the email address for her is incorrect, which Defendants knew or should have known.

70.    Jon Seibert, Vision Solar's CEO, is listed as the "contact" for the solar installer, Vision Solar.

71.    The ADI Registration Certification Form is signed by Seibert, who falsely "warrants, certifies, and represents that 1) the information provided in this form is true and correct to the best of his or her knowledge . . . 8) the Installer/Developer [i.e. Vision Solar] has reviewed and explained the system technical specifications to the Premise and Primary contact; 9) the information submitted with this registration is accurate[.]"

72.    Seibert's handwritten signature appears next to the forged signature of Mrs. Migliore, and he attests that "[t]he information, statements, and documents I have provided in and with this document are true and accurate to the best of my knowledge," as depicted:

| Primary Contact (SREC-II Owner) | Solar Installer/Developer |
|---|---|
| Signature: *Eva Migliore* | Signature: *Jon Seibert* |
| Print Name: Eva Migliore | Print Name: Jon Seibert |
| Date: 12/15/2022 | Date: 12/15/2022 |

73.    Seibert knew or should have known that Mrs. Migliore's signatures were not authentic, as the signatures on the documents were handwritten, which on information and belief is contrary to Vision Solar's standard practice of using electronic signatures instead of handwritten signatures.

74.    Defendants did not disclose the existence of these forged documents to Plaintiff.

75.    On information and belief, Defendants Sunlight and Vision Solar would not be eligible to receive full payment under the forged contracts without the forged submissions and Seibert's false attestations to the State of New Jersey.

***Defendants Obtain and Use Mrs. Migliore's Consumer Report without Authorization***

76.    On October 28, 2022, Defendants, without notice or permission, obtained and used Mrs. Migliore's consumer reports from Experian and Trans Union, without any permissible purpose or authorization.

77.    At no point during Mrs. Migliore's interaction with Defendants' sales agent did he mention that her consumer report would be accessed.

78.     Indeed, Defendants' sales agent forged Mrs. Migliore's signature on a Power of Attorney that purports to give Vision Solar authorization to "execute . . . credit applications" on Mrs. Migliore's behalf.

79.     But for Defendants obtaining and using Mrs. Migliore's consumer reports to determine whether she met Defendants' credit requirements, Defendants would not have been able to proceed.

### *Defendants' Pattern and Practice of Fraudulent and Deceptive Conduct*

80.     Defendants, as a pattern and practice, regularly engage in forgeries and other fraudulent and deceptive conduct, or enable and condone such conduct.

81.     Vision Solar is a repeat offender, and the other Defendants knew or should have known this, but nonetheless continued their business relationships with Vision Solar.

82.     Hundreds of other complaints have been filed against Vision Solar and its financing partners. Consumers across New Jersey and across the country have complained that Defendants' sales agents have engaged in forgeries or other fraudulent or deceptive conduct.

83.     Some of these irate consumers have complained to organizations like the Better Business Bureau, or to state attorneys general.

84.     On February 27, 2023, the Connecticut Attorney General filed suit against Vision Solar LLC alleging that it has engaged in marketing and/or sales tactics that cause or influence consumers to execute lengthy and expensive solar contracts without the ability to make an informed, independent choice, including, *inter alia*:

> (a) Pressuring consumers to sign up for solar installations the same day as the first in-home solicitation;

14

(b) Pressuring consumers not to have Defendant's agreements reviewed by counsel before signing;

(c) Engaging in in-home sales pitches to individuals whom, due to intellectual or linguistic challenges, salespersons knew or should have known were unable to make informed decisions as to whether to purchase Defendant's services;

(d) Obscuring the effect of a consumer's signature, such as by falsely stating or suggesting that the signature was only for "preapproval" purposes;

(e) Presenting consumers with contracts or other documents, and soliciting the consumer's electronic signatures, on the salesperson's cell phone, tablet or laptop computer where the consumer could not easily read or evaluate the documents in advance; and

(f) Failing to provide consumers with copies of contracts they had signed until days or weeks later.

85.     On April 10, 2023, a class action lawsuit was filed against Vision Solar alleging that it deliberately targeted vulnerable populations—including low-income, disabled, and elderly individuals—and induced them into the purchase or lease of solar panel systems by systematically misrepresenting the benefits of such systems and the financial terms of the loans and leasing transactions.

86.     Nonetheless, these complaints have not stopped Vision Solar from continuing with the same systemic course of conduct of deceiving consumers. Nor have they stopped the other Defendants from continuing to associate and/or partner with Vision Solar, as Defendants continue to profit from Vision Solar's deceptive sales practices.

87.     Despite ample notice of serious problems with their corporate processes and operations, Defendants continued to allow and enable their sales agents to engage in forgeries and other fraudulent or deceptive conduct.

***Damage from Defendants' Fraudulent Conduct***

88.     As a result of Defendants' willful, wanton, reckless, and/or negligent actions, Mrs. Migliore has been damaged.

89.     Defendants' willful, wanton, reckless, and/or negligent conduct has resulted in Mrs. Migliore becoming obligated on contracts she never saw or signed, including the 25-Year Loan and the RSA.

90.     Defendants' willful, wanton, reckless, and/or negligent conduct has resulted in Plaintiff being deemed obligated to the 25-Year Loan and the RSA.

91.     Mrs. Migliore has suffered mental and emotional distress, worry, and aggravation as a result of Defendants' actions.

## COUNT I
## New Jersey Consumer Fraud Act

92.     Plaintiff repeats the allegations contained above as if the same were here set forth at length.

93.     Defendants' sales and business practices are subject to the CFA and its regulations.

94.     Defendants are subject to the CFA, N.J.S.A. 56:8-1 et seq. and its regulations.

95.     The CFA, at N.J.S.A. 56:8-2, prohibits the use of "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely

upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise."

96.     Defendant Vision Solar's deceptive conduct and misrepresentations, including with respect to its role in obligating Plaintiff to the 25-Year Loan, and its false representations to the State of New Jersey, violate N.J.S.A. 56:8-2 and constitutes an unconscionable commercial practice.

97.     Defendant Seibert's deceptive conduct and misrepresentations, including with respect to his false representations to the State of New Jersey, violate N.J.S.A. 56:8-2 and constitutes an unconscionable commercial practice.

98.     Defendant Sunlight's deceptive conduct and misrepresentations, including with respect to its role in obligating Plaintiff to the 25-Year Loan, violate N.J.S.A. 56:8-2 and constitutes an unconscionable commercial practice.

99.     The CFA also states: "It shall be an unlawful practice for a person in connection with a sale of merchandise to require or request the consumer to sign any document as evidence or acknowledgment of the sales transaction, of the existence of the sales contract, or of the discharge by the person of any obligation to the consumer specified in or arising out of the transaction or contract, unless he shall at the same time provide the consumer with a full and accurate copy of the document so presented for signature but this section shall not be applicable to orders placed through the mail by the consumer for merchandise."  N.J.S.A. 56:8-2.22.

100.     Defendants Vision Solar's, Sunlight's, and Cross River Bank's failure to provide Plaintiff the 25-Year Loan and RSA, as applicable, violates the CFA, N.J.S.A. 56:8-2.22.

101.     The CFA's regulations prohibit sellers and home improvement contractors from "[k]nowingly fail[ing] to make any material statement of fact, qualification or explanation if the

omission of such statement, qualification or explanation causes an advertisement, announcement, statement or representation to be false, deceptive or misleading." N.J.A.C. § 13:45A-16.2(a)(9)(ii).

102.    The CFA's regulations also require that "[a]ll home improvement contracts for a purchase price in excess of $ 500.00, and all changes in the terms and conditions thereof shall be in writing," and "signed by all parties[.]" N.J.A.C. § 13:45A-16.2(a)(12).

103.    The Contractors' Registration Act likewise requires that "every home improvement contract for a purchase price in excess of $500, and all changes in the terms and conditions of the contract, shall be in writing" and "signed by all parties[.]" N.J.S.A. 56:8-151(a).

104.    The Contractors' Registration Act provides "that a home improvement contract may be cancelled by a consumer for any reason at any time before midnight of the third business day after the consumer receives a copy of it." N.J.S.A. § 56:8-151(b).

105.    Defendant Vivint Solar, LLC is a licensed as a home improvement contractor with the State of New Jersey, with the registration number 13VH10165900.

106.    Defendant Vision Solar's conduct violates the CFA and its implementing regulations, including those pertaining to home improvement practices.

107.    As a result of Defendants' violations of the Consumer Fraud Act and its implementing regulations, as applicable, Plaintiff has suffered ascertainable losses, which include the purported contractual obligations of the 25-year Loan and RSA, and the costs associated with removing the solar panels from the roof of the house (including any necessary repairs).

**WHEREFORE**, Plaintiff Eva Migliore demands judgment in her favor against Defendants for:

    a.   Actual damages;

    b.   Treble damages under the Consumer Fraud Act at N.J.S.A. 56:8-19;

    c.   Declaratory judgment that the contracts involved herein are void, canceled, and unenforceable;

    d.   Equitable relief requiring Defendants to remove the solar panels and repair any damage to Mrs. Migliore's residence;

    e.   Reasonable attorneys' fees and costs under the CFA at N.J.S.A. 56:8-19 and all other applicable statutes;

    f.   Interest; and

    g.   Any other relief the Court deems just and proper.

**COUNT II**
**Identity Theft/Forgery**

108.      Plaintiff repeats the allegations contained above as if the same were here set forth at length.

109.      Defendants, with the purpose to defraud, or with knowledge that it was facilitating a fraud, forged and used Plaintiff's signatures on the 25-Year Loan, the RSA, the Power of Attorney, the submissions to the State of New Jersey, and other related documents without Plaintiff's authorization or consent.

110.      Defendants, with the purpose to defraud, or with knowledge that it was facilitating a fraud, forged and used Plaintiff's signatures on documents filed with the State of New Jersey without the authorization or consent of Plaintiff.

111.    The conduct of Defendants violates N.J.S.A. § 2C:21-17.4 (incorporating N.J.S.A. §§ 2C:21-1, 2C:21-17).

112.    As a result of Defendants' conduct, Plaintiff has suffered ascertainable losses, which include the purported contractual obligations of the 25-year Loan and RSA, and the costs associated with removing the solar panels from the roof of the house (including any necessary repairs).

WHEREFORE, Plaintiff Eva Migliore demands judgment in her favor and against Defendants for:

(a)    Damages, N.J.S.A. § 2C:21-17.4(a);

(b)    Treble damages, N.J.S.A. § 2C:21-17.4(a);

(c)    Declaratory judgment that the contracts involved herein are void, canceled, and unenforceable;

(d)    Equitable relief requiring Defendants to remove the solar panels and repair any damage to the Whiting, NJ residence;

(e)    Reasonable attorneys' fees and costs;

(f)    Interest; and,

(g)    Any other relief the Court deems just and proper. N.J.S.A. § 2C:21-17.4(a).

## COUNT III
## Fraudulent Concealment/Nondisclosure

113.    Plaintiff repeats the allegations contained above as if the same were here set forth at length.

114.    Defendants had a legal obligation to disclose the 25-year Loan, RSA, Power of Attorney. and related documents to Plaintiff, which included many material terms and conditions.

115.     Defendants had a legal obligation to disclose other documents (bearing Plaintiff's forged signature) filed with the State of New Jersey.

116.     Defendants intentionally concealed and did not disclose the above documents to Plaintiff at any point before the installation of the panels on her home.

117.     As a result of Defendants' intentional concealment and nondisclosure, Plaintiff suffered emotional distress, worry, aggravation, and stress, and has been deemed contractually bound to the 25-Year Loan and RSA that she did not sign.

118.     Defendants' concealment and nondisclosure was willful, malicious, wanton, intentional, and reckless.

WHEREFORE, Plaintiff Eva Migliore demands judgment in her favor and against Defendants for:

(a)     Actual damages;

(b)     Punitive damages;

(c)     Declaratory judgment that the contract involved herein is void, canceled, and unenforceable;

(d)     Equitable relief requiring Defendants to remove the solar panels and repair any damage to Plaintiff's property;

(e)     Interest; and

(f)     Any other relief the Court deems just and proper.

### COUNT IV
### FAIR CREDIT REPORTING ACT

119.     Plaintiff repeats the allegations contained above as if the same were here set forth at length.

120.    Defendants have violated the Fair Credit Reporting Act by willfully and/or negligently obtaining and/or using Plaintiff's consumer credit reports without a statutorily permissible purpose. 15 U.S.C. §§ 1681b(f), 1681n, 1681o.

121.    Defendants' willful and/or negligent conduct also includes, but is not limited to, the following:

(a) Continuing to give sales agents access to electronic tools that allow them to obtain a consumer's credit report without the consent of the consumer;

(b) Failing to adopt policies, procedures, and practices that would prevent sales agents from obtaining a consumer's credit report without the consent of the consumer;

(c) Failing to supervise sales agents to ensure that they would not obtain a consumer's credit report without the consent of the consumer;

(d) Failing to train sales agents to ensure that they would not obtain a consumer's credit report without the consent of the consumer;

(e) Disregarding complaints of fraudulent or deceptive conduct and/or impermissible credit pulls by sales agents; and,

(f) Employing quotas and/or sales goals/metrics that incentivize sales agents to pull credit reports without the consent of the consumer.

122.    Defendants' willful and/or negligent corporate action and/or inaction proximately caused damage to Plaintiff.

**WHEREFORE**, Plaintiff Eva Migliore demands judgment against Defendants for:

(a)    Actual and compensatory damages;

(b)    Statutory damages;

(c)      Punitive damages;

(d)      Attorney's fees and costs; and

(e)      Such other and further relief as the Court shall deem just and proper.

**COUNT V**
**TRUTH IN LENDING ACT**
**(against Cross River Bank only)**

123.      The Truth in Lending Act mandates that lenders disclose certain "costs of credit" associated with the transaction.  Accurate disclosure of the "amount financed," the "finance charge," and the "Annual Percentage Rate" (APR) are necessary in order for consumers to be able to make meaningful comparisons of credit alternatives, and are mandatory disclosures. 15 U.S.C. § 1638.

124.      Terms such as "amount financed," "finance charge," and "annual percentage rate" must be used, as well as a "descriptive explanation" of each of these terms.  15 U.S.C. §1638(a).

125.      The Act mandates that these disclosures be written in a manner that is accurate, clear and conspicuous.  See 15 U.S.C. §1632(a); Reg. Z, §1026.17(a).

126.      Cross River Bank did not comply with the requirements of the TILA.

127.      Cross River Bank did not provide Mrs. Migliore disclosures of the "amount financed," "finance charge," and "annual percentage rate," nor any other disclosures, as Cross River Bank did not provide Mrs. Migliore the 25-Year Loan or any related disclosures contemporaneously with the loan transaction.

128.      Cross River Bank violated the Truth in Lending Act, 15 U.S.C. §§ 1632(a), 1638(a)(2)–(5), and Reg. Z, § 1026.17.

**WHEREFORE**, Plaintiff Eva Migliore respectfully asks this Court to grant judgment in her favor and against Defendant Cross River Bank for:

     (a)     Actual damages;

     (b)     Statutory damages;

     (c)     Reasonable attorney's fees and costs; and,

     (d)     Such other relief as the Court shall deem just and proper.

## V. **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury as to all issues so triable.

## VI. **CERTIFICATION PURSUANT TO N.J.S.A. 56-8:20**

The undersigned hereby certifies that a copy of the Complaint was sent via first class

United States Mail, postage prepaid, to:

Office of the Attorney General
P.O. Box 112
Trenton, NJ 08625-0112

Respectfully submitted:

Date: <u>May 15, 2023</u>

    <u>*/s/ Andrew M. Milz*</u>
    CARY L. FLITTER
    ANDREW M. MILZ
    JODY T. LÓPEZ-JACOBS
    **FLITTER MILZ, P.C.**
    1814 East Route 70, Suite 350
    Cherry Hill, NJ 08003
    (856) 396-0600

    *Attorneys for Plaintiff*