## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

EVA MIGLIORE,

          *Plaintiff*,

   v.

JON SEIBERT *et al.*,

          *Defendants*.

No. 23-cv-02623

OPINION

Jody Thomas Lopez-Jacobs
Andrew M. Milz
FLITTER MILZ, P.C.
1814 East Route 70, Ste. 350
Cherry Hill, NJ 08003

    *On behalf of Plaintiff*

Brett Adam Berman
FOX ROTHSCHILD LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103

    *On behalf of Defendants Jonathan
    Seibert, Vision Solar LLC, and Vision
    Solar NJ LLC*

Aleksandra Kaplun
MCGUIRE WOODS LLP
1251 Avenue of the Americas, 20th Floor
New York, NY 10020

    *On behalf of Defendants Sunlight
    Financial, LLC and Cross River
    Bank*

**O'HEARN, District Judge.**

This matter comes before the Court upon Motions to Dismiss filed by Vision Solar NJ LLC, and Jonathan Seibert (together the "Vision Solar Defendants"), (ECF No. 36), and Defendants Sunlight Financial LLC and Cross River Bank (together, the "Lender Defendants"),

(ECF No. 38), as a well as a Motion to Seal filed by Sunlight Financial LLC. (ECF No. 41).[1]  For the following reasons, the Motion to Dismiss filed by the Lender Defendants is **GRANTED,** the Motion to Dismiss filed by the Vision Solar Defendants is **GRANTED IN PART AND DENIED IN PART**, and the Motion to Seal filed by Sunlight Financial is **GRANTED**.

## I.   BACKGROUND[2]

In October 2022, a sales representative visited Plaintiff Eva Migliore's ("Plaintiff") Whiting, New Jersey home to solicit the installation of solar panels. (Pl.'s Second Am. Compl., ECF No. 35, ¶ 45). Plaintiff initially resisted the procedure, but the agent assured her that if she agreed immediately, he could proceed at no cost to her. (ECF No. 35, ¶¶ 45–46). Plaintiff verbally agreed to the installation, (ECF No. 35, ¶ 47), and the panels were installed in January 2023. (ECF No. 35, ¶ 53). The representative did not disclose that the solar panels would be subject to a financing agreement or provide any documentation of such an agreement. (ECF No 35, ¶¶ 47–49).

Vision Solar contacted Plaintiff to arrange for an inspection of the solar panels, leading Joseph Migliore to investigate the installation. (ECF No. 35, ¶ 55). Documents were then emailed to Plaintiff, including a "Summary of Key Loan Terms" and a "Solar Energy System Long-Term Loan Agreement Promissory Note," dated October 28, 2022 (the "25-Year Loan"). (ECF No. 35, ¶¶ 58–60). Plaintiff discovered other documents, including a "Solar Purchase Disclosure Form" and an "ADI Registration Form," bearing the signature of Jonathan Seibert, CEO of one or more

---

[1] Vision Solar LLC was a defendant in this action and also joined in the Vision Solar Defendants' Motion to Dismiss. However, Vison Solar LLC filed a Suggestion of Bankruptcy on December 29, 2023, (ECF No. 54), and on January 3, 2024, the Court terminated this action against it and administratively terminated its Motion to Dismiss. (ECF No. 55). Thus, the Court does not consider or determine the viability of any claims against that entity.

[2] The Court accepts the factual allegations in the Second Amended Complaint as true and will view all facts in the light most favorable to Plaintiff as the non-moving party. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005).

Vision Solar entities. (ECF No. 35, ¶¶ 77–89). The 25-Year Loan purports to obligate Plaintiff to pay $99,749.82 to finance the installation of the solar panels. (ECF No. 35, ¶ 59). All documents bear electronic signatures in Plaintiff's name, though Plaintiff denies signing them. (ECF No. 35, ¶¶ 59, 62, 65). The documents appear to have been sent to an email address that does not belong to Plaintiff and signed by a user of that email address. (ECF No. 35, ¶¶ 57, 64, 70, 73). Plaintiff notified Defendants she wished to cancel the transactions in February 2023, but Defendants denied the request and consider her bound by the agreements. (ECF No. 35, ¶ 62–63, 74).

## II.   <u>PROCEDURAL HISTORY</u>

On May 15, 2023, Plaintiff filed a Complaint asserting claims against all Defendants for violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq* (the "NJFCA") (Count I), identity theft in violation of N.J.S.A. 2C:21-17.4 (the "Identity Theft Statute") (Count II), common law fraudulent concealment (Count III), and violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681b(f), 1681n, 1681o (the "FCRA") (Count IV). (Pl.'s Compl., ECF No. 1, ¶¶ 107–138). The Complaint also asserts a claim against Cross River Bank for violations of the Truth in Lending Act, 15 U.S.C. § 1601(a) ("TILA"). (Pl.'s Compl., ECF No. 1, ¶¶ 139–49).

Plaintiff filed an Amended Complaint on June 6, 2023. (ECF No. 11). The Lender Defendants filed a Motion to Dismiss on July 26, 2023. (ECF No. 31).

Plaintiff again amended the Complaint on August 15, 2023 (the "Second Amended Complaint"). (ECF No. 35). The Vision Solar Defendants filed a Motion to Dismiss on August 21, 2023. (ECF No. 36). And the Lender Defendants filed a Motion to Dismiss on August 29, 2023. (ECF No. 38). On September 18, 2023, Plaintiff filed Opposition to both motions. (ECF Nos. 42, 43). The Lender Defendants replied on September 25, 2023, (ECF No. 44), and filed a Notice of supplementary authority in support of their Motion to Dismiss on October 5, 2023. (ECF No. 45).

The Vision Solar Defendants did not reply. Sunlight Financial filed a Motion to Seal, (ECF No. 46), on October 9, 2023, seeking to permanently seal Exhibit A to the Lender Defendants' Motion to Dismiss, (ECF No. 39), and the unredacted version of Plaintiff's Opposition to the Lender Defendants' Motion to Dismiss. (ECF No. 41).

On November 7, 2023, Defendant Sunlight Financial filed a Suggestion of Bankruptcy notifying the Court that it filed for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware. (ECF No. 50). Because the filing of a chapter 11 petition operates a stay of pending litigation against a debtor, on November 7, 2023, the Court ordered the Clerk of the Court to terminate this action against Sunlight Financial and administratively terminate its pending Motion to Dismiss and Motion to Seal. (ECF No. 51). On March 3, 2024, Plaintiff and Defendant Sunlight Financial stipulated that Sunlight Financial had confirmed a chapter 11 plan of reorganization and that Sunlight Financial should be reinstated in this action and its Motions should be reactivated. (ECF No. 57). On March 18, 2024, the Court did so. (ECF No. 58).

### III.   LEGAL STANDARD

A pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In deciding a motion to dismiss, a district court asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) (quoting *Scheuer v. Rhoades*, 416 U.S. 232, 236 (1974)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions'"); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* ... provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*.").

In deciding a Rule 12(b)(6) Motion, the court may only consider the facts alleged in the pleadings, any attached exhibits, and any matters of judicial notice. *S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). The court may also consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion. Fed. R. Civ. P. 12(d).

## IV.   **DISCUSSION**

Plaintiff's claims arise from an alleged scheme by which a sales representative—implied, but not outright stated to be an employee of a Vision Solar entity—fraudulently induced Plaintiff to agree to the installation of solar panels on her home under the pretense that such installation would be at no cost to her, and thereafter forged her signature on a financing agreement obligating her to pay for them. Plaintiff alleges that this scheme gives rise to claims against all Defendants on several theories, including that the sales representative acted as an agent on behalf of all Defendants and that all Defendants directly furthered the scheme. In an apparent effort to sweep all Defendants into as many claims as possible, Plaintiff's Second Amended Complaint contains overly inclusive language and broad factual allegations. Yet, she fails to plead certain fraud claims with the particularity required under Federal Rule of Civil Procedure 9(b). And she fails to plead sufficient facts showing an agency relationship between the sales representative and Jonathan Seibert, Sunlight Financial, or Cross River Bank. While Plaintiff's claims against Vision Solar NJ,

LLC survive, all other claims fail, except for that alleging a NJCFA violation by Jonathan Seibert.[3]

### A. Vision Solar Defendants' Motion to Dismiss on the Grounds that an Audio Recording of a Phone Call "Nullifies" Plaintiff's Claims Against Them

The Vision Solar Defendants move to dismiss Counts I-IV against them on the grounds that an audio recording of a telephone call (the "Welcome Call") between Plaintiff and representatives of Vision Solar "nullifies" Plaintiff's claims. The Court cannot consider the Welcome Call at this procedural stage, and the Vision Solar Defendants' Motion to Dismiss on these grounds must therefore be denied.

"A court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp.* 998 F.2d at 1196. A complaint is "based on" a document if the document is (1) integral to or (2) explicitly relied upon in the complaint. *See In re Burlington Coat Factory*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal citation omitted). Documents may be "integral to a complaint" when the contents of the documents provide the basis of a plaintiff's claim. *Lepore v. SelectQuote Insurance Servs.*, No. 22-3390, 2023 WL 8469761, at *3 (3d Cir. Dec. 7, 2023) (finding documents are integral to a complaint when they "establish the right that the plaintiff claims was infringed or when they constitute the unlawful conduct for which the plaintiff seeks to recover."). And documents are "explicitly relied upon" when the complaint specifically mentions or cites them. *Id.*

As a threshold matter, the Welcome Call is not "undisputedly authentic" as required for consideration at this stage. *Pension Benefit Guar. Corp.* 998 F.2d at 1196. To show evidence is authentic, "the proponent must produce evidence sufficient to support a finding that the item is

---

[3] Plaintiff alleges in conclusory fashion that Cross River Bank is subject to all claims that Plaintiff asserts against Vision Solar and Sunlight Financial under the FTC Holder Rule. (ECF No. 35, ¶ 28). To the extent Plaintiff intends by this allegation to assert an independent basis for relief against Cross River Bank, this allegation fails to plead any supporting facts showing entitlement to relief and must be disregarded. *Twombly*, 550 U.S. 544, 563 n.8.

what the proponent claims it is." Fed. R. Evid. 901(a). The Vision Solar Defendants included the Welcome Call as Exhibit A with their Motion to Dismiss, (ECF No. 36-4). However, they provide absolutely nothing to support the authenticity of this audio file, such as an affidavit or certification as to its content. They provide no information as to when this recording was made, who the participants are, when it took place, whether it represents all of the communications between the parties, etc. Without such information, the Court cannot even conclude the Welcome Call is authentic. Fed. R. Evid. 901(a).

Even if the Welcome Call *was* undisputedly authentic, the Second Amended Complaint is not "based on" the Welcome Call, and it thus cannot be considered. The Second Amended Complaint does not "explicitly rel[y] upon" the Welcome Call because it does not mention or cite it or the communications therein. *Lepore*, 2023 WL 8469761, at *3. And the Welcome Call is not "integral to" the Second Amended Complaint because Plaintiff does not allege any right established or wrongdoing based upon the call that gives rise to her claims. *Lepore*, 2023 WL 8469761, at *3. The rights for which Plaintiff seeks to recover—fraudulent concealment, identity theft, and violations of the NJCRA, FCRA, and TILA—emerge from the common law and statute and consist of misrepresentations by the sales representative, forgeries of her signature, and impermissible access of her credit report—none of which are alleged to have occurred during the Welcome Call. The Second Amended Complaint is thus in no way "based on" the Welcome Call, and the Court cannot consider it at this stage. *Burlington Coat Factory*, 114 F.3d at 1426.

In support of their argument that the Welcome Call can be considered at this stage, the Vision Solar Defendants rely on *Pinkney v. Meadville, Pennsylvania*, No. 21-1051, 2022 WL 1616972 (3d Cir. 2022). In *Pinkney*, a party who was arrested but later released sued a police officer for false arrest. The plaintiff alleged that an interview with a third party—which the officer

cited as the basis for the arrest—failed to provide probable cause for his detainment. The Third Circuit determined that the district court should have considered an audio recording of that interview upon a motion to dismiss the false arrest claim. The *Pinkney* Court reached this conclusion because plaintiff's claim was fundamentally based on the content of the interview, and the audio recording, which was undeniably authentic, provided a contemporaneous record of that content. Unlike the recording in *Pinkney*, the Welcome Call is not undeniably authentic. And while it may relate to some of Plaintiff's claims, it certainly does not provide an all-encompassing, contemporaneous recording of all of the events upon which Plaintiff bases her claims.

The Court declines to convert the pending motion to a motion for summary judgment as Plaintiff is clearly entitled to adequate discovery. Vision Solar NJ LLC does not argue any other grounds for Dismissal, and that entity's Motion to Dismiss must therefore be denied in its entirety.

### B. Motions to Dismiss by Jonathan Seibert and the Lender Defendants

Jonathan Seibert moves to dismiss all claims against him on the grounds that he cannot be individually liable for any action he may have taken through his capacity as an officer of Vision Solar. The Lender Defendants move to dismiss Plaintiff's Claims against them because Counts I–III cannot hold them responsible for the conduct of the sales representative and also fail to satisfy Rule 9(b)'s requirement that claims of fraud be stated with particularity. The Lender Defendants further argue that Count IV fails to adequately allege they violated the FCRA, and Count V fails because Plaintiff cannot state a TILA claim related to a credit agreement that she alleges is invalid. Plaintiff alleges facts that support Jonathan Seibert's potential liability for NJCFA violations in Count I but not for the claims alleged in Counts II–IV. And Plaintiff fails to allege facts supporting any claim against the Lender Defendants. The Court therefore denies Jonathan Seibert's Motion to Dismiss with respect to Count I and grants his Motion with respect to Counts II–IV. The Court grants the Motion to Dismiss filed by the Lender Defendants in its entirety.

1. Count 1: Violations of the New Jersey Consumer Fraud Act

Plaintiff fails to allege sufficient facts to support a claim that the Lender Defendants engaged in unlawful conduct under the NJCFA but plausibly alleges facts that Jonathan Seibert could be personally liable for violations of that Act. Therefore, the Lender Defendants' Motion to Dismiss must be granted as to Count I, and Mr. Seibert's Motion must be denied as to Count I.

To state a claim under the NJCFA, a plaintiff must show: "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Cole v. Wells Fargo Bank, N.A.*, 790 F. App'x 460, 466 (3d Cir. 2019). As remedial legislation, the NJCFA is construed liberally in favor of consumers. *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 461 (NJ 1994).

Unlawful conduct includes (1) affirmative acts; (2) knowing omissions; and (3) regulation violations. *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007). The NJCFA identifies among affirmative acts "deception, fraud . . . [and] misrepresentation," *Allen v. V & A Bros.*, 26 A.3d 430, 440 (N.J. 2011), though this category is otherwise "intentionally open-ended." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 296 (D.N.J. 2009). Regulation violations contemplate only violations of regulations promulgated under the NJCFA. *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 436 (D.N.J. 2012). An ascertainable loss may be demonstrated by showing "[a]n improper debt or lien against a consumer-fraud plaintiff." *Cox*, 647 A. at 464. And causation requires showing a "causal nexus" between the unlawful conduct and the loss. *Mladenov v. Wegmans Food Markets, Inc.*, 308 F.R.D. 127, 132 n.3 (D.N.J. 2015).

NJCFA claims must be pleaded with particularity under Rule 9(b). *Slimm CD, Inc. v. Heartland Payment Sys.*, No. 06–2256, 2007 WL 2459349 (D.N.J. Aug. 22, 2007). To satisfy this standard, plaintiffs must "identify specific actions taken by the defendant, when and where those

actions were taken, and the identity and role of individual actors" in the alleged fraud. *Simner v. LG Elecs. U.S.A., Inc.*, No. 21-13322, 2023 WL 3173698, at *6 (D.N.J. May 1, 2023).

*i. Claim Against Jonathan Seibert Under the NJCFA*

Plaintiff alleges sufficient facts to state a claim that Jonathan Seibert may be personally liable for a violation of the NJCFA through the allegation that he signed and submitted to the State of New Jersey a "Solar Purchase Disclosure Form" and an "ADI Registration Form" that obligated Plaintiff on the 25-Year Loan. This act satisfies the NJCFA's "unlawful conduct" requirement because a fraudulent filing constitutes a "misrepresentation" regarding the integrity of the documents, which is an "affirmative act" of misconduct under the NJCFA.[4] *Allen*, 26 A.3d at 440. Plaintiff has also alleged ascertainable losses in the form of an "improper debt" because of her alleged obligation to the 25-Year Loan. *Cox*, 647 A.2d at 464. And Plaintiff has alleged a "causal nexus" between the unlawful conduct and her loss by alleging that she would not be obligated under the Loan if Mr. Seibert had not filed the documents. *Mladenov*, 308 F.R.D. at 132 n.3.

Mr. Seibert argues that he cannot be held personally liable under the NJCFA because he signed the documents in his corporate capacity, and the corporate form shields him from liability. "[A] director or officer of a corporation does not incur personal liability for its torts *merely by reason* of his official character. *N. Am. Steel Connection, Inc. v. Watson Metal Prod. Corp.*, 515

---

[4] The "intentionally open-ended" nature of the definition of "affirmative acts," *Mickens*, 900 F. Supp. 2d at 436, and the NJCFA's broad construction in favor of consumer protection further weigh toward this conclusion. *Cox*, 647 A.2d at 461. Mr. Seibert's purported filing may also be an act of criminal fraud. N.J.S.A. 2C:21-3, titled "frauds relating to public records" imposes penalties upon a person who, "knowing that a written instrument contains a false statement or false information, offers or presents it to a public office or public servant with knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office or public servant." Violations of statutes outside of the NJCFA regulations may constitute "affirmative acts" of unlawful conduct within the meaning of that Act. *See, e.g., In re Cohen*, 191 B.R. 599, 608 (D.N.J. 1996) (finding landlord's violation of local rent control statute constitutes "affirmative act" of unlawful conduct for purposes of the NJFCA).

F. App'x 176, 182 (3d Cir. 2013) (internal citation omitted) (emphasis added). But, "employees and officers of a corporation may . . . bear individual liability to consumers" for individual conduct that violates the NJCFA, even if they engaged in that conduct through the corporation. *Id.* at 136; *see also G & F Graphic Servs., Inc. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 587 (D.N.J. 2014) ("Liability will be imposed on an individual [under the CFA] when that specific individual has engaged in conduct prohibited by the CFA.") (internal citations omitted). The corporate form therefore does not shield Mr. Seibert from liability for personally signing and filing the ADI and the Solar Purchase Disclosure Form, even if he acted through Vision Solar in doing so. *Allen*, 26 A.3d at 441. Plaintiff has thus plausibly stated a claim against Mr. Seibert under the NJCFA.

### ii. Claims Against the Lender Defendants Under the NJCFA

Plaintiff fails to state a claim against the Lender Defendants for violation of the NJCFA because she does not plead with particularity that they engaged in "unlawful conduct" as required by the Act. Plaintiff alleges that "Defendant Sunlight's deceptive conduct and misrepresentations, including with respect to its role in obligating Plaintiff to the 25-Year Loan, violate N.J.S.A. 56:8-2 and constitute an unconscionable commercial practice," and therefore unlawful conduct under the NJCFA. (ECF No. 35, ¶ 113). But Plaintiff does not describe the "deceptive conduct," or the content of any "misrepresentations" allegedly made by Sunlight Financial.  This vague and conclusory allegation of Sunlight Financial's undefined "role" in purported wrongdoing fails to "identify specific actions taken by the defendant" as required to state a claim for fraud under Rule 9(b). *Simner*, 2023 WL 3173698, at *6.

Plaintiff also alleges she states a claim because the  "failure [of the Lender Defendants] to provide Plaintiffs the 25-Year Loan and RSA, as applicable, violates . . . N.J.S.A. 56:8-2.22." (ECF No. 35, ¶ 115). The cited regulation provides, "[i]t shall be an unlawful practice for any

person . . . to *require or request [a] consumer to sign any document* as evidence . . . of [a] sales transaction . . . unless he shall at the same time provide the consumer with a full and accurate copy of the document." N.J.S.A. § 56:8-2.22. (emphasis added). Plaintiff argues that Defendants requested her signature by causing the documents to be emailed to the incorrect email address. (ECF No. 35, ¶¶ 64, 67). But this allegation is illogical and inconsistent with the other allegations in the Second Amended Complaint: Defendants could not have requested nor required Plaintiff to sign the document by intentionally sending it to an incorrect email address where she could not access it, let alone sign it, in an effort to commit fraud and forgery. Because Plaintiff fails to allege any actual request or requirement that she sign the challenged documents, she fails to sufficiently allege under the NJCFA that either Sunlight Financial or Cross River Bank engaged in unlawful conduct by regulatory violation under N.J.S.A. § 56:8-2.22, an essential element of an NJCFA claim. Thus, Count I of the Second Amended Complaint must be dismissed against the Lender Defendants without prejudice.

2. Count II: Identity Theft Under N.J.S.A. § 2C:21-17.4

Plaintiff does not allege facts that the Lender Defendants or Jonathan Seibert stole her identity or that any agency relationship existed between these Defendants and the alleged identity thief. Therefore, motions to dismiss filed by these Defendants must be granted as to Count II.

The Identity Theft Statute "imposes liability for obtaining the personal identifying information of another person and using that information, or assisting another person in using that information, to pretend to be the victim." *Fogarty v. Household Fin. Corp. III*, No. 14-4525, 2015 WL 852071, at *15 (D.N.J. Feb. 25, 2015) (citing N.J.S.A. § 2C:21-17.4). Civil actions under this statute lie only against the identity "thief" who actually steals the identity and any principal for whom the thief acts as an agent. *See Reilly v. Vivint Solar,* No. 18-12356, 2021 WL 261084, at *10

(D.N.J. Jan. 26, 2021) (upholding an identity theft claim where a plaintiff adequately alleged that a corporate "defendant (or its agent, and therefore it) was the thief of Plaintiff's information"); *Fogarty*, 2015 WL 852071, at *15 (finding plaintiff could not state a claim under the Identity Theft Statute against third party who had no role in actual theft of identity); *see also Piscitelli v. Classic Residence by Hyatt*, 973 A. 2d 948, 967 (N.J. Super. Ct., App. Div. 2009) (explaining that liability under the Identity Theft Statute "is directed against the thief").

The only specific act of identity theft Plaintiff alleges is the sales representative's forgery of her signature on the 25-Year Loan and other documents. (ECF No. 39, ¶ 72). Plaintiff thus identifies the sales representative as the alleged "identity thief," and offers no facts suggesting any other Defendant stole her identity. Thus, any claim that Jonathan Seibert or the Lender Defendants are liable for identity theft must rely on a theory that the sales representative acted as their agent.

"An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1434 (3d Cir. 1994). To plead liability on an agency theory, plaintiffs "must allege facts sufficient to allow such a relationship to be proven at trial." *Jurimex v. Avis Rent a Car System, LLC*, 65 F. App'x 803, 808 (3d Cir. 2003).[5] However, they are  "not required to have extensive proof at the complaint stage." *Id.*

---

[5] Plaintiff contends that mere allegations of an agency relationship always survive dismissal, citing *Jurimex* wherein the Third Circuit has "held that discovery is necessary when an agency relationship is alleged, thereby implicitly allowing allegations of agency to survive a facial attack." 65 F. App'x at 808. However, this ignores and is contrary to the immediately preceding sentence: "Jurimex must allege facts sufficient to show such a relationship to be proven at trial." *Id.* Plaintiff's interpretation would also exempt agency relationships from the Third Circuit's dictate that, under *Twombly* and *Iqbal*, "stating a claim requires a complaint with enough factual matter (taken as true) to suggest [a] required element" *Phillips*, 515 F.3d at 234. Plaintiff's interpretation is incorrect.  Agency relationships are not subject to any special exemption from the pleading requirements of Rule 12(b)(6), and plaintiffs must plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of" the relationship. *Id.*

Here, Plaintiff fails to allege sufficient facts showing an agency relationship between the sales representative and Mr. Seibert. To the extent Plaintiff contends that the sales representative is a Vision Solar employee, no agency relationship exists between Mr. Seibert and the representative by virtue of this role. *Belmont v. MB Partners, Inc.*, 708 F.3d 470, 489 (3d Cir. 2013) ("A corporate employee typically acts on behalf of the corporation, not its owner or officer . . . so that there is no agency relationship between an officer or director and an employee.") (citing *Meyer v. Holley*, 537 U.S. 280, 286 (2003)). [6] And Plaintiff pleads no facts showing that Mr. Seibert otherwise "controlled or directed" the sales representative in his personal capacity or that the representative acted on his behalf. *Am. Tel. & Tel. Co.*, 42 F.3d at 1434.

Plaintiff also fails to plead the existence of an agency relationship between the sales representative and the Lender Defendants. The only specific fact Plaintiff alleges in support of such a relationship is that an agreement between the Lender Defendants and Vision Solar (the "Financing Program Agreement") gave the Lender Defendants authority to direct the actions of the sales representative. (Pl.'s Second Am. Compl., ECF No. 35, ¶ 36). However, the referenced agreement describes a contractual relationship by which Vision Solar employees and third-party sales representatives sourced and transmitted loan applications to Sunlight Financial, which reviewed those applications, made credit approval decisions, and then sent loan documents back

---

[6] Plaintiff refers to the representative as "Defendants' sales agent" throughout the Complaint and does not explicitly state that the representative was a Vision Solar employee. (ECF No. 39, ¶¶ 2, 45, 48, 72, 92). However, Plaintiff implies that the sales representative was a Vision Solar employee by, among things, indicating that Vision Solar installed the solar panels and falsely assumed power of attorney on her behalf. (ECF No. 35, ¶¶ 80, 82–85, 93).

to the representatives for execution by borrowers.[7] (Financing Program Agreement, ECF No. 39, ¶¶ 3.3-4). Nothing in the agreement suggests that Sunlight Financial controlled or directed sales representatives' solicitation of loan applications beyond providing training in compliance and the use of its technology. (ECF No. 39, ¶ 9.1(a)). And the agreement expressly provides that Sunlight Financial executes loan agreements on its own behalf. (ECF No. 39, ¶ 16.8). The Financing Program Agreement thus provides no support for the existence of an agency relationship between Sunlight Financial and the sales representative. *See Grimmett v. Sunlight Financial LLC*, No. 23-00084, 2023 WL 6449447, at *7 (D.W.V Oct. 3, 2023) (finding that a nearly identical arrangement did not create an agency relationship between Sunlight Financial and another solar panel installer); *Carrier v. Bank of America*, *N.A.*, No. 12-104, 2014 WL 356219, at *5 (finding no agency relationship between lender and title agent who sourced loan applications). Furthermore, the Financing Program Agreement does not mention Cross River Bank and, therefore provides no basis that the sales representative was its agent.

Plaintiff thus fails to plead sufficient facts to support a claim based on agency between the sales representative and Mr. Seibert and/or the Lender Defendants. Absent any such relationship, Plaintiff fails to allege a plausible claim for identity theft against the Lender Defendants or Jonathan Seibert. Count II must therefore be dismissed without prejudice as to these Defendants.

3.    Count III: Common Law Fraudulent Concealment and Nondisclosure

Plaintiff fails to allege fraudulent concealment with particularity as to Jonathan Seibert,

---

[7] The Lender Defendants attached the Financing Program Agreement as Exhibit A to their Motion to Dismiss. (ECF No. 39). As discussed herein, an extrinsic document may be considered upon a motion to dismiss if the Complaint is "based upon" the document. *Pension Benefit Guar. Corp.*, 998 F.2d at 1196. The Second Amended Complaint cites the Program Agreement as evidence of an agency relationship, and therefore "explicitly relies" upon it. *Id.* The Second Amended Complaint is therefore partially "based on" the Agreement, and it is properly considered here.

and the Lender Defendants, and their Motions to Dismiss Count III must therefore be granted. To state a claim for common law fraudulent concealment, a plaintiff must allege that the defendant "(1) had a duty to disclose (2) a material fact (3) that plaintiff could not discover without defendant disclosing it; (4) that defendant intentionally failed to disclose that fact; and (5) the plaintiff was harmed by relying on the nondisclosed." *Polhill v. FedEx Ground Package Syst.*, 604 F. App'x. 104, 107 n.2 (3d Cir. 2015) (citing *Rosenblit v. Zimmerman*, 166 N.J. 391, 766 A.2d 749, 757–58 (2001)). Rule 9(b) applies to such claims. *Id.* at 108.

Plaintiff alleges in conclusory terms that all Defendants are liable for fraudulent concealment because they all failed to disclose to Plaintiff the existence of the 25-Year Loan and associated documents. (ECF No. 35, ¶¶ 128–33). Plaintiff's only specific allegation as to any party's role in this concealment is that the sales representative forged Plaintiff's signature and sent documents to an incorrect email address. (ECF No. 35, ¶58, 63, 70). These allegations fail to identify with particularity the role Mr. Seibert, Sunlight Financial, or Cross River Bank played in the alleged fraud. *Simner*, 2023 WL 3173698, at *6; *Grant v. Turner*, 505 F. App'x, 107, 112 (3d Cir. 2012) ("[B]y lumping all [defendants] together and naming them as a group, each defendant has not been properly or sufficiently placed on notice of the exact nature of the claims asserted, as these claims apply to each defendant."). And as discussed herein, no agency relationship exists by which Mr. Seibert or the Lender Defendants are otherwise liable for the sale representative's actions. Plaintiff therefore fails to allege fraudulent nondisclosure against these Defendants with the particularity required to state fraud claims under Rule 9(b). Count III must therefore be dismissed without prejudice.

4. Count IV: Violation of the Fair Credit Reporting Act

Plaintiff fails to allege facts that Mr. Seibert personally accessed her credit report and

16

alleges that Sunlight Financial and Cross River Bank did so under circumstances that cannot support an FCRA Claim. Therefore, the Motions to Dismiss filed by the Lender Defendants and Jonathan Seibert must be granted as to Count IV.

To prevail on an FCRA claim, plaintiffs must prove a defendant "(1) accessed Plaintiff's consumer credit report without a permissible purpose and (2) defendant did so negligently or willfully." *Reilly*, 2021 WL 261084, at *6. "There is no violation of [the FCRA] when a creditor obtains a credit report due to an imposter's application for credit even though the identity theft victim did not make the application." *Glanton v. DirecTV, LLC*, 172 F. Supp. 3d 890, 896 (D.S.C. 2016) (collecting cases); *see also Mathews v. Verizon Commc'ns Inc.*, No. 19-21442, 2020 WL 5201407, at *7 (D.N.J. Sept. 1, 2020 (holding that a defendant may not be liable for identity theft where "Plaintiff was . . . a victim of identity theft, and Defendant obtained Plaintiff's credit report as a result of an inquiry from a third party.").

Plaintiff's only specific allegation of an FCRA violation is that the sales representative submitted false loan applications to the Lender Defendants that caused them to impermissibly access her credit reports. (ECF No. 35, ¶¶ 31, 91, 93). Plaintiff thus alleges that the Lender Defendants unlawfully accessed her credit reports because of identity theft. "[T]here is no violation [of the FCRA] . . . even though the identity theft victim did not make the application" under these circumstances. *Glanton*, 172 F. Supp. 3d at 896; *see also Matthews*, 2020 WL 5201407, at *7. And Plaintiff offers no other specific allegations of FCRA violations that are entitled to the assumption of truth. Plaintiff therefore alleges no facts that Jonathan Seibert or the Lender Defendants violated the FCRA, and Count IV must be dismissed without prejudice.

   5. <u>Count V: Violation of the Truth in Lending Act</u>

Cross River Bank's Motion to Dismiss must granted as to Count V because Plaintiff cannot

plausibly allege a TILA claim when she simultaneously alleges the credit agreement at issue is invalid. The Truth in Lending Act requires creditors to disclose certain information "to the person *obligated* on a consumer credit transaction." *Cahalan v. Ameriquest Mortg. Co.*, No. 05-0309, 2006 WL 1312961, at *2 (W.D. Pa. May 10, 2006) (citing 15 U.S.C. § 1631) (emphasis added). TILA thus offers no remedy when a challenged transaction is invalid, including because of forgery. *See, e.g.*, *Jensen v. Ray Kim Ford, Inc.*, 920 F.2d 3, 4 (7th Cir. 1990) (finding TILA "does not reach the forged document which created no obligation . . . ."); *Cahalan*, 2006 WL 1312961, at *2 (finding Plaintiff could not assert a TILA claim when he separately challenged the validity of the credit agreement at issue); *Walker v. Michael W. Colton Tr.*, 47 F. Supp. 2d 858, 865 (E.D. Mich. 1999) ("[A]llegedly forged documents receive no protection under TILA . . . ."). Accordingly, courts routinely dismiss TILA claims where plaintiffs allege the challenged credit agreement was forged or falsified. *See, Jensen*, 920 F.2d at 4 (affirming dismissal of TILA claim based on forged contract because TILA only provides a remedy for persons "obligated" on a valid consumer credit transaction); *Islam v. Lee's Motors*, 2018 WL 4771884, at *3–4 (E.D.N.Y. Sept. 30, 2018) (finding plaintiff "fails to satisfy the threshold requirement" of obligation on a TILA claim where plaintiff also alleged his signature on credit agreement was forged, and the agreement was therefore void); *Walker*, 47 F. Supp. 2d at 866 ("[T]aking as true the factual allegations asserted . . . this Court has no choice but to dismiss plaintiff's TILA claim because such allegedly forged documents receive no protection under TILA."); *Fillmore v. Markham Motors Outlet*, No. 95-7439, 1996 WL 238733, at *2 (N.D. Ill. May 3, 1996) (dismissing *sua sponte* a TILA claim where Plaintiff alleged the credit agreement at issue was forged). In the Second Amended Complaint, Plaintiff repeatedly claims that her signature was forged on the 25-Year Loan. (ECF No. 39, ¶¶ 5, 62, 66, 93, 124).

18

Such forged documents "receive no protection under TILA," and Count V must be dismissed. [8]

**C. Lender Defendants' Motion to Seal**

Sunlight Financial moves to permanently seal Exhibit A to the Motion to Dismiss filed by the Lender Defendants, (ECF No. 39), as well as Plaintiff's unredacted Opposition to the Motion to Dismiss Filed by the Lender Defendants. (ECF No. 41). No party opposes the motion. Good cause exists to seal these documents, and Sunlight Financial's Motion is therefore granted.

It is well-settled that there exists a "common law public right of access to judicial proceedings and records," *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001). The moving party bears the burden of overcoming this presumption of public access and must demonstrate that a "good cause" exists to protect the material at issue. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). Good cause exists only when the moving party makes a particularized showing that disclosure will cause a "clearly defined and serious injury" and is not established where a party merely provides "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning." *Id.* (quoting *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)). Local Civil Rule 5.3, which governs motions to seal, dictates that the party seeking to seal documents must describe (a) the nature of the materials at issue, (b) the legitimate private or public interests that warrant the relief sought, (c) the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available. L. Civ. R. 5.3.

Exhibit A to the Lender Defendants' Motion to Dismiss, (ECF No. 39), and certain

---

[8] Plaintiffs are permitted to plead in the alternative. Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."). However, Plaintiff did not do so here.

portions of the unredacted version of Plaintiff's Opposition to the Lender Defendants' Motion to Dismiss, (ECF No. 41), respectively consist of the Financing Program Agreement and extensive quotations from that agreement. The Financing Program Agreement memorializes a confidential business arrangement between Sunlight Financial and Vision Solar. It includes Sunlight Financial's loan criteria and term agreements with contractors, among other sensitive business information. Sunlight Financial asserts that it has a legitimate privacy interest in maintaining the confidentiality of its business agreements, trade secrets, and commercial information, and a breach of this confidentiality can result in serious injury through reduced standing in the marketplace as competitors learn of its business practices. *See Goldenberg v. Indel, Inc*., 2012 WL 15909, at *3 (D.N.J. Jan. 3, 2012). The Lender Defendants further assert that no less restrictive alternative to sealing Exhibit A exists because the Financing Program Agreement includes sensitive business material throughout its text, and redaction is therefore not a viable alternative. Sealing the unredacted version of the Opposition is minimally restrictive because a narrowly redacted version remains available on the public docket.

The Lender Defendants meet all of the elements required to support their Motion to Seal Exhibit A to the Lender Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, (ECF No. 39), and Plaintiff's unredacted Opposition to the Motion to Dismiss Filed by the Lender Defendants, (ECF No. 41). As such, good cause exists for the protection of this material, and the Court grants this Motion.

## V.   **CONCLUSION**

For the foregoing reasons, the Motion to Dismiss filed by Defendants Jonathan Seibert and Vision Solar NJ LLC, (ECF No. 36), is **GRANTED IN PART AND DENIED IN PART,** and the Motion to Dismiss filed by Defendants Sunlight Financial LLC and Cross River Bank, (ECF No. 38) is **GRANTED**. The Motion to Seal filed by Sunlight Financial LLC, (ECF No. 46), is **GRANTED**. An appropriate Order accompanies this Opinion.

**CHRISTINE P. O'HEARN**
**United States District Judge**